# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Elizabeth Doriott,
    Petitioner,

vs.                                                                              Case No. 1:05cv292
                                                                          (Spiegel, J.; Black, M.J.)

Court of Common Pleas of
Warren County, Ohio,
    Respondent.

## REPORT AND RECOMMENDATION

      Petitioner, who is a physician on an own-recognizance bail bond, brings this action through counsel for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in order to halt her prospective retrial on state charges of Deception to Obtain a Dangerous Drug and to obtain her release from the custody of the Warren County Court of Common Pleas. She asserts that continuing her criminal prosecution violates the Double Jeopardy Clause. This matter is before the Court on the petition, respondent's return of writ, and petitioner's response. (Docs. 1, 3, 6).

### Procedural Background

      On June 1, 2004, the grand jury of Warren County, Ohio indicted petitioner on eleven counts of Deception to Obtain a Dangerous Drug in contravention of Ohio Revised Code § 2925.22(A). (Doc. 3 at 1, Doc. 1 at 2). According to respondent, petitioner was charged with writing prescriptions to employees, but using the medications for her personal use or the use of family members. (Doc. 3 at 1).

On October 11, 2004, a jury was empaneled and sworn and criminal trial commenced. (Doc. 1 at 2). On October 12, 2004, after the state had rested, defense counsel asserted that the state had failed to provide defendant with certain documents in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 3-2, Tr. 50-51). After holding a brief hearing outside of the jury's presence, the trial judge dismissed the indictment and discharged the jury, finding that the non-disclosure of the documents constituted a *Brady* violation which could not be remedied. (Doc. 3-3, Tr. 69; Doc. 3 at 2; Doc. 1-1).

On November 1, 2004, the grand jury re-indicted petitioner on the same eleven counts which were the subject of the original indictment. (Doc. 1 at 3; Doc. 3 at 2).

On December 21, 2004, petitioner filed a motion to dismiss the new indictment on the ground that it violated her rights under the Double Jeopardy Clause. (Doc. 1 at 3; Doc. 3 at 2; Doc. 8-2). On March 1, 2005, the trial judge overruled the motion. (Doc. 3-8). On March 9, 2005, petitioner filed a notice of appeal to the Ohio Court of Appeals. (Doc. 3-5). On March 23, 2005, the Ohio Court of Appeals dismissed the appeal as interlocutory, finding that it was without jurisdiction to consider the appeal. (Doc. 3-5). On April 25, 2005, petitioner pursued a further appeal to the Supreme Court of Ohio. (Doc. 1 at 3).

On May 2, 2005, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that her continued custody is barred by the Double Jeopardy Clause. (Doc. 1, Habeas Petition). On May 18, 2005, the Warren County Court of Common Pleas stayed the criminal proceeding against petitioner pending petitioner's appeal in the Supreme Court of Ohio. On August 10, 2005, the Supreme Court of Ohio declined to review petitioner's appeal. (Doc. 11). Accordingly, petitioner has requested that this Court now rule upon the writ (*see id*.), as she anticipates that on August 26, 2005 the state trial court will lift its stay of proceedings and schedule the retrial.

On the merits, in his return of writ, respondent argues that petitioner has failed to exhaust her state court remedies, that the federal district should abstain from interfering with the state criminal proceeding, and that a retrial is not prohibited by the Double Jeopardy Clause. (Doc. 3).

# OPINION

Respondent preliminarily asserts that petitioner has failed to exhaust her state court remedies and that the federal court should abstain from interfering in a state criminal proceeding. However, the Sixth Circuit has rejected these two related arguments in the Double Jeopardy context.

In *Harpster v. Ohio,* 128 F.3d 322, 324 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998), the Sixth Circuit explained that because the Double Jeopardy Clause protects against being twice tried or placed in jeopardy, not just twice punished, federal adjudication of such claims on a pre-trial basis is appropriate. Otherwise, the petitioner would not enjoy the full protection of the Clause nor avoid "exposure" to double jeopardy. 128 F.3d at 324.

With respect to exhaustion, the Sixth Circuit requires that the claim be raised and rejected in the state trial court, and that there exist no right to interlocutory appeal. *Id.*; *see Johnson v. Karnes,* 198 F.3d 589, 592 n.2 (6th Cir. 1999). Petitioner satisfies both these requirements. She filed a motion to dismiss the second trial on Double Jeopardy grounds which was denied. (Doc. 1-2). The Ohio Court of Appeals ruled that the denial was not a final appealable order (Doc. 3-5), and the Supreme Court of Ohio declined jurisdiction to hear a further appeal, in keeping with Ohio law. *See Harpster,* 128 F.3d at 326 (order overruling motion to dismiss on double jeopardy grounds is not final appealable order in Ohio). Accordingly, federal adjudication is appropriate at this time.

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The guarantee against double jeopardy, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), protects against "a second prosecution for the same offense after conviction or acquittal." *Palazzolo v. Gorcyca,* 244 F.3d 512, 516 (6th Cir.) (citing *Ohio v. Johnson,* 467 U.S. 493, 498 (1984) and *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)), *cert. denied,* 534 U.S. 828 (2001).

The Double Jeopardy Clause protects individuals "not against being twice punished, but against being twice put into jeopardy." *Ball v. United States,* 163 U.S. 662, 669 (1896). A defendant is placed in jeopardy in a criminal proceeding when he is put to trial before the trier of fact, either a judge or jury. *United States v. Jorn,* 400 U.S. 470, 479 (1971). In the case of a jury trial, jeopardy attaches when the jury is seated and sworn. *Crist v. Bretz,* 437 U.S. 28 (1978).

The Double Jeopardy Clause ensures the finality of criminal judgments and also protects a defendant's "right to have his trial completed by a particular tribunal." *Jorn,* 400 U.S. at 484; *see also Arizona v. Washington,* 434 U.S. 497, 503 (1978). "The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon egregiously erroneous foundation.'" *Washington,* 434 U.S. at 503 (quoting *Fong Foo v. United States,* 369 U.S. 141, 143 (1962)).

The Double Jeopardy Clause reflects the idea that:

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187-188 (1957). The Double Jeopardy bar also serves as an obstacle to the government's gaining an unfair advantage by learning its weaknesses and the strengths of the defense from the first trial. *United States v. DiFrancesco,* 449 U.S. 117, 128 (1980).

Nonetheless, the Double Jeopardy bar is only absolute "when there is a dismissal or acquittal based on a factual determination of innocence." *Scott,* 437 U.S. at 94.

When, as here, a criminal prosecution ends without finally resolving the merits of the charges, retrial is not automatically prohibited. The defendant's right to have his trial completed by one tribunal is subordinated to the public's interest in "fair trials designed to end in just judgments" because of the myriad of circumstances which may necessitate discharging a jury, many of which do not

"invariably create unfairness to the accused." *Washington,* 434 U.S. at 505; *United States v. Cameron,* 953 F.2d 240, 242 (6th Cir. 1992) (quoting *Wade v. Hunter,* 336 U.S. 684, 689 (1949)).

Where the trial has not ended in conviction or acquittal, reprosecution is permitted when the defendant either requests or consents to a mistrial (so long as the government did not provoke the request) or when the mistrial is justified by "manifest necessity." *DiFrancesco,* 449 U.S. at 130; *United States v. Dinitz,* 424 U.S. 600 (1976).

Consent to a mistrial may be implied "if there is some positive indication from the record of the defendant's willingness to consent to declaration of a mistrial." *Malinovsky v. Court of Common Pleas of Lorain County, Ohio,* 7 F.3d 1263, 1272 (6th Cir. 1993), *cert. denied,* 510 U.S. 1194 (1994). The failure to object to a mistrial, alone, is insufficient to manifest consent, *Glover v. McMackin,* 950 F.2d 1236, 1240 (6th Cir. 1991), unless "the sum of the surrounding circumstances positively indicates this silence was tantamount to consent." *United States v. Gantley,* 172 F.3d 422, 428 (6th Cir. 1999). To determine whether a defendant consents, the Court must conduct a "careful examination of the totality of the circumstances." *Id.*

In the absence of a defendant's consent to a mistrial, and in light of the importance of a defendant's right to have his case tried by the original tribunal and a mistrial's frustration of that right, the prosecutor has the "heavy burden" of justifying the mistrial by demonstrating "manifest necessity." *Washington,* 434 U.S. at 505.[1]

Manifest necessity is defined as a "high degree" of necessity, but not an absolute degree of necessity. *Id.* at 506; *see Harpster,* 128 F.3d at 328. The "classic formulation" of the manifest necessity test dates back to an 1824 opinion by Justice Story of the Unites States Supreme Court, stating:

---

[1] *See also Corey v. District Court of Vermont, Unit #1, Rutland Circuit,* 917 F.2d 88, 90 (2nd Cir. 1990); *Crawford v. Fenton,* 646 F.2d 810, 817 (3rd Cir.), *cert. denied,* 454 U.S. 872 (1981). *But cf. Venson v. Georgia,* 74 F.3d 1140, 1146 (11th Cir. 1996) (on habeas corpus review, court must assume state trial judge found manifest necessity).

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. . . .but, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*United States v. Perez,* 22 U.S. 579, 580 (1824); *Washington,* 343 U.S. at 506.

The United States Supreme Court has eschewed the formulation of rules based on categories of circumstances which allow or prohibit retrial, or rules based on the source of the problem causing the mistrial or the beneficiary of the ruling. *Jorn,* 400 U.S. at 480, 486. Instead, trial courts are directed to refrain from aborting a trial until a "scrupulous exercise of judicial discretion" leads them to conclude that justice would not be served by continuing the proceedings. *Id.* at 484.

A reviewing court must afford deference to the trial court's determination of manifest necessity. *Washington,* 434 U.S. at 511. The amount of deference depends on the basis for the mistrial.

Where the basis for the mistrial is unavailability of the prosecution's evidence, the reviewing court exercises "the strictest scrutiny" of the trial court's decision. *Washington,* 343 U.S. at 507. On the other hand, the trial court's decision to declare a mistrial when the jury is unable to reach a verdict or when the trial judge believes that the jury's impartiality may be compromised is accorded great deference. *Id.* at 509-511.

In determining whether a trial judge exercised sound discretion in declaring a mistrial, a reviewing court considers factors such as whether the trial judge heard the opinions of the parties about the propriety of the mistrial, whether he considered the alternatives to a mistrial, and whether he acted deliberately, instead of abruptly. *Washington,* 343 U.S. at 515-516; *Cameron,* 953 F.2d at 246.

A trial judge is not required to make an explicit finding of manifest necessity or to explain his mistrial ruling. *Washington,* 343 U.S. at 516-517. Yet, the exercise of discretion "stands on much firmer ground" when "it is apparent on the face of the record the reasons for a particular decision, and the analytic process leading to that conclusion." *Glover,* 950 F.2d at 1241.

A trial judge exercises "sound discretion" when he engages in "careful consideration and solicitude for the serious consequences attendant upon mistrial." *Karnes,* 198 F.3d at 596 (quoting *Glover,* 950 F.2d at 1241).

Herein, after the state presented its case, and out of the presence of the jury, defense counsel Pinales indicated that he had just been handed two typewritten pages from the prosecutor's file which had not previously been provided to the defense, and which documents he believed to be *Brady* material. Tr. 50-51. He asked the court to review the material and determine whether it was in fact *Brady* material. *Id.*

The judge questioned both defense counsel as to whether they had seen the document before, and they insisted that they had not. Tr. 52. The trial court then took a twenty minute break to review the documents. Tr. 52-53.

After the break, the trial court inquired of Dr. Davy, a defense witness, whether she had created the document, and Dr. Davy acknowledged that she had done so, along with another individual. Tr. 53. The trial judge then inquired whether petitioner was informed of the contents of the document, and Dr. Davy responded that she was. Tr. 54. The trial judge further asked defense counsel to identify what portions of the documents were unfamiliar to them, which they did paragraph by paragraph. Tr. 55-59. The judge also questioned the prosecution as to whether there were follow-up investigations based on the information in the documents, and the prosecutor indicated that there were in some instances. Tr. 60.

Defense counsel Pinales interrupted, claiming that the judge was missing the point, that the real issue was whether there was evidence favorable to the defense which the prosecutor had in his file. Tr. 61. The judge responded as follows:

> Well, the issue is prejudice, Mr. Pinales. It's not a question, it's not a game, it's not, "Hey, we didn't get this, we get a dismissal." The issue is, but for this evidence, would there be a different result in the trial.

7

> So if you know all this material then, but for this evidence, there would not be a different issue. If you know it all, you can bring it to bear the same as the prosecution.

Tr. 62.

Defense counsel disagreed, stating that he may have asked the agent other questions had counsel had the document. Defense counsel also argued that "the mere fact that it is in existence and corroboration, that, in and of itself, even if I know about it is useful to the defense." Tr. 63.

The prosecutor volunteered that there was a follow-up investigation and report concerning persons mentioned in the documents, which the defense countered it would have wanted to see. Tr. 66. The trial judge then noted that there are "some ships literally and figuratively in this case that have sailed because of the inability to cross examine the state's witnesses." Tr. 67. When the prosecutor offered to make those witnesses available, attorney Pinales argued that if he had had these documents, he would also have directed his investigator to pursue other leads. Tr. 67-68. At the prosecution's suggestion, the trial judge asked Dr. Davy whether she had relayed the substance of the withheld documents to defense counsel, and she replied that she had not. Tr. 68-69. At that point, the trial judge announced:

> The court is going to dismiss the charges against Dr. Doriott. The court does find there is a *Brady* violation that cannot be remedied at this time.

Tr. 69. The record demonstrates that the colloquy after the break lasted for seventeen minutes. Tr. 69.

Petitioner argues initially that because the trial judge dismissed the indictment, as opposed to granting a mistrial, double jeopardy absolutely prohibits further prosecution. However, a state trial judge's characterization of his own action is not binding on the federal courts. *See Malinovsky,* 7 F.3d at 1269 n. 2 (citing *Scott,* 437 U.S. at 96); *cf. Watkins v. Kassulke,* 90 F.3d 138, 141, 143 (6th Cir. 1996) (although no formal declaration of mistrial, trial judge's actions treated as "defacto mistrial" for purposes of analyzing double jeopardy question).

In *Malinovsky, supra,* the state trial judge dismissed the case for want of prosecution, but the federal district court determined that his action was essentially a mistrial. 7 F.3d at 1269. Defining mistrial as "a trial which has been terminated prior to its normal conclusion because of some extraordinary event, prejudicial error that cannot be corrected at trial, or a deadlocked jury," the Sixth Circuit agreed with the recharacterization. *See Malinovsky,* 7 F.3d at 1269 & n. 3 (citing *Black's Law Dictionary* 1002 (6th ed. 1990)); *cf. Watkins,* 90 F.3d at 141 (essential characteristic of mistrial is that original jury did not hear case through to verdict). The federal appellate court then proceeded to apply the principles of consent and manifest necessity to determine whether retrial was permitted. 7 F.3d at 1270-1271.

In the instant case, the state trial judge dismissed the case because the state withheld documents, a matter which the judge perceived as prejudicial error which could not be corrected at trial. Accordingly, the judge's actions fit the definition of mistrial established by the Sixth Circuit. *Cf. United States v. Gaytan,* 115 F.3d 737, 742 (6th Cir. 1997) (where district court dismissed the indictment with prejudice based on a *Brady* violation, appellate court concluded that principles of consent and manifest necessity apply to determine whether retrial is permitted).

Moreover, while the judge's characterization of his action is not dispositive, the record reflects that in denying petitioner's motion to dismiss the second indictment on double jeopardy grounds, the state trial court judge referred to his actions as a "dismissal/mistrial." Doc. 3-8.

Turning to the issue of whether petitioner consented to the mistrial, as respondent claims, the undersigned finds that the record lacks any indication of express consent to a mistrial by petitioner. Petitioner's failure to object does not amount to implied consent because in reviewing the totality of circumstances, the record does not provide a positive indication of petitioner's willingness to consent.

In the colloquy with the state trial judge, defense counsel advanced the argument that his ability to conduct a proper defense was compromised because he did not have the withheld documents with which to cross-examine the state's witnesses and because the documents would have provided additional leads for investigation. However, at no point did defense counsel suggest or promote the idea that a mistrial or dismissal was the remedy for these problems or that the trial could not go forward.

9

During the course of his discussion with counsel, the judge made a passing remark about dismissal when he was discussing the prejudice requirement of the *Brady* rule. He also talked about how some ships had sailed, apparently alluding to the difficulty of remedying the situation. Otherwise, the trial judge gave very little warning of his intent to dismiss the case, at which point one might have expected counsel to respond, nor did the trial judge elicit counsels' views on the subject of dismissal either before or after the dismissal. *Cf. Gaytan,* 115 F.3d at 743-744 (defendant's consent could not be implied when judge precipitously granted mistrial after defendants argued that *Brady* materials had not been disclosed).

These facts are very different from those in *United States v. Gantley*, 172 F.3d 422 (6th Cir. 1999), a case referenced by respondent in support of its argument that petitioner impliedly consented. In the *Gantley* case, the Sixth Circuit found implied consent where defense counsel did not object to a mistrial because (1) in an off-the-record conference after the judge declared a mistrial, the prosecutor suggested an alternative to a mistrial, defense counsel retorted that the jury was already prejudiced, and the judge determined that the alternative was unacceptable because defendant's right to a fair trial had been compromised; and (2) then, on the record, the trial judge "essentially invited an objection" by twice asking counsel if there was anything else to address. 172 F.3d at 426-427, 429.

The more difficult issue in the present case is whether manifest necessity existed for the mistrial. The trial judge in this case did not explicitly find that there was a manifest necessity for his ruling, nor is he required to do so. However, the undersigned is troubled by respondent's failure, in its return of writ, to support its position that manifest necessity existed for the mistrial by applying the law to the specific facts of this case – despite the truth that it is the prosecution's burden to justify the mistrial by demonstrating manifest necessity.

Nevertheless, this Court will consider whether the state trial judge exercised sound discretion in aborting the trial by examining the relevant factors: (1) whether the trial judge heard the opinions of the parties about the propriety of the mistrial, (2) whether he considered the alternatives to a mistrial, and (3) whether he acted deliberately, instead of abruptly. *See Washington,* 343 U.S. at 515-516; *Cameron,* 953 F.2d at 246.

Although the trial judge heard the opinions of the parties on the existence of a *Brady* violation and the problems inherent with that violation, he did not elicit their opinions on the propriety of a mistrial. Defense counsel suggested that he was

hampered in his cross-examination by the lack of the withheld documents. When the prosecutor offered to make his witnesses available for further cross-examination, defense counsel pointed to yet another problem, *i.e.*, that his investigation of the case could have been more extensive had he acquired the documents pre-trial. Defense counsel did not go so far, however, as to indicate that the situation was irreparable.

Furthermore, the record fails to demonstrate that the trial judge considered alternatives to dismissal. The only alternative proposed to remedy the *Brady* problem was the prosecutor's suggestion that he make his witnesses available for further cross-examination. However, the trial judge failed to explore that suggestion with the parties or address the suggestion.

As petitioner points out, the record is devoid of any indication that the judge considered a recess, a stay of the proceedings, a continuance, or the exclusion of certain testimony or documents. (Doc. 1 at 10). These are typical remedies for a *Brady* violation.[2] *See, e.g., United States v. Walker,* No. 95-5546, 1997 WL 5772, at **3 (4th Cir. Jan. 8, 1997) and cases cited therein (use of exculpatory evidence on cross-examination cures *Brady* violation); *Odoms v. Hatcher,* No. 95-15830, 1996 WL 184464, at **3 (9th Cir. April 17, 1996) (continuance for as much time as needed to investigate tardily disclosed police report), *cert. denied,* 519 U.S. 954 (1996).

In his comment about the ships having sailed, the trial judge implied that it was too late to repair the situation, and when he granted a dismissal, he stated that the violation could not be remedied. However, there is no evidence in the record that the trial court judge actually gave serious consideration to less extreme alternatives to dismissal.

Finally, the trial judge's declaration of a dismissal came about abruptly. Although the alleged *Brady* violation was discussed for over fifteen minutes, the parties were given sparse warning that a dismissal was forthcoming.

---

[2] A violation of *Brady* does not entitle defendant to an acquittal. *United States v. Coleman,* 862 F.2d 455, 459 n.5 (3rd Cir. 1988), *cert. denied,* 490 U.S. 1070 (1989); *United States v. Davis,* 578 F.2d 277, 280 (10th Cir. 1978). "[T]he most the invocation of *Brady* could accomplish would be the ordering of a new trial." *Davis,* 578 F.2d at 280.

11

In conclusion, the record fails to demonstrate the "scrupulous[3] exercise of judicial discretion" that the United States Supreme Court requires to abort a trial. *Jorn,* 400 U.S. at 484.[4]

A review of the trial judge's ruling on petitioner's motion to dismiss the second indictment is instructive on this issue. *Cf. Johnson,* 199 F.3d at 596 (federal court looked to state trial judge's remarks on motion to dismiss on double jeopardy grounds, concluding that they further evidenced a "misunderstanding of the manifest necessity standard and the import of a mistrial declaration").

The entry of the trial court provides:

> A review of the transcript in which the court ultimately dismissed the charges against the Defendant clearly reflects that the assistant prosecutor was doing everything in his power to preserve the proceedings. He did not "goad" the court into its declaration. [5] It was not an intentional withholding in the sense that it was not done for the purpose of sabotaging the defense. The court would be hard pressed to reach a conclusion that the dismissal/mistrial was necessitated by judicial or prosecutorial impropriety to avoid an acquittal.
>
> The termination of the prior case was done on a basis unrelated to guilt or innocence. Jeopardy did not attach. [6] (Doc. 3-8).

---

[3] Webster defines "scrupulous" as "punctiliously exact: painstaking." Webster's Dictionary at 1039 (1975 ed.).

[4] "If the record reveals that the trial court judge has failed to engage in a scrupulous exercise of discretion, there has been an abuse of the 'sound discretion' entrusted to her." *Ross v. Petro,* No. 5:04CV00849, 2005 WL 1126758, at *18 (N.D.Ohio May 3, 2005) (Report and Recommended Decision of Magistrate Judge) (citing Brady v. Samaha, 667 F.2d 224, 229 (1st Cir. 1981)).

[5] When a mistrial is granted at defendant's request, retrial is generally barred unless the prosecution "goaded" defendant into moving for a mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 674-76 (1982). In this case, because defendant did not move for a mistrial, this standard is not applicable.

[6] The trial judge's statement that jeopardy did not attach was clearly in error, because the original indictment was dismissed after the trial had begun and after the state had completed presenting its case. *See Crist v. Bretz,* 437 U.S. 28 (1978) (jeopardy attaches when the jury is seated and sworn).

The trial court based its ruling denying petitioner's motion to dismiss the second indictment on the absence of prosecutorial or judicial impropriety. However, as the United States Supreme Court explains, that is not the end of the inquiry:

> If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such motion, the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be serviced by a continuation of the proceedings. *Jorn,* 400 U.S. at 485 [footnote omitted].

Herein, the trial judge's ruling fails entirely to take into account the manifest necessity doctrine, providing further evidence that the issue was not properly considered during the trial.

The undersigned is cognizant that this Court must afford deference to a trial judge's determination of manifest necessity. However, in this case, the trial court's focus was on an assessment of whether or not a *Brady* violation occurred.[7] The record reflects that the trial judge discussed the materiality or prejudice requirement under *Brady*. He indicated that a showing must be made that a reasonable

---

[7] To establish a *Brady* violation, it must be shown that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the suppressed evidence was material to guilt or punishment, "irrespective of the good faith or bad faith of the prosecution." *Moore v. Illinois,* 408 U.S. 786, 794-95 (1972); s*ee also Brady,* 373 U.S. at 87; *Bowling v. Parker,* 138 F.Supp.2d 821, 880 (E.D. Ky. 2001), *aff'd,* 344 F.3d 487 (6th Cir. 2003), *cert. denied,* 125 S.Ct. 281 (2004). Ordinarily, however, the state is not obligated to disclose evidence available to the defense from other sources. *See, e.g., United States v. Zuazo,* 243 F.3d 428, 431 (8th Cir. 2001) (no *Brady* violation for failure to disclose witness statement where witness available to defense).

13

probability exists that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Moreover, because he heard the state's evidence, he was in the best position to make a determination of prejudice which was likely difficult to assess mid-trial.

While this Court affords deference to the trial judge's conclusion that the withholding of the documents offended *Brady,* the same deference cannot be extended to the trial judge's decision to end the trial because he failed to exercise sound discretion. *Cf. Johnson,* 198 F.3d at 596. The record fails to reflect the "careful consideration and solicitude for the serious consequences attendant upon mistrial." *Johnson,* 198 F.3d at 596.

The parties disagree as to whether the standards established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), apply to this case. Petitioner argues that the standards do not apply because she brought her case pursuant to 28 U.S.C. § 2241, not § 2254.

The Sixth Circuit has determined, however, that the AEDPA standards govern review of state trial court decisions when pre-trial habeas corpus petitions are brought to protect a petitioner's rights under the Double Jeopardy Clause. *See Johnson,* 198 F.3d at 592; *Harpster,* 128 F.3d at 326; *see also Ross v. Petro,* No. 5:04CV00849, 2005 WL 1126758, at *12 (N.D.Ohio May 3, 2005) (Report and Recommended Decision of Magistrate Judge).

Under the standard established by the AEDPA, codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a

conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

A federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal court conducts a *de novo* review, instead of applying the AEDPA standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 539 U.S. 510 (2003), the Supreme Court reviewed *de novo* a portion of a claim not analyzed by the state court, without deferring to the state court or applying the AEDPA's standard of reasonableness); *see also Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003).

Because the state trial judge failed to exercise sound discretion in aborting the first trial, his decision to terminate that trial and deny petitioner's motion to dismiss the second indictment on double jeopardy grounds involved an unreasonable application of the United States Supreme Court's precedents pertaining to the manifest necessity standard. Accordingly, the retrial of petitioner violates her protections under the Double Jeopardy Clause.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be GRANTED, and petitioner be released from custody.


Date:  August 24, 2005                                    S/ Timothy S. Black
      hr                                                                     Timothy S. Black
                                                                               United States Magistrate Judge

J:\Blackts\Hilda (05-292 doubjeop).wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Elizabeth Doriott,
    Petitioner

vs                                                Case No. 1:05cv292
                                                  (Spiegel, J.; Black, M.J.)

Court of Common Pleas of
Warren County, Ohio,
    Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).